2013-1028. Ms. Ellis, is it? Yes, it is. Good morning, Your Honor. My name is Maria Ellis. I'm with Neville Peterson, and we represent Fulton Industries in this case. Your Honor, you notice this case simply deals with the classification of paper punch machines, and whether they are classified under heading A-203 as a hand tool or heading 84-41 as paper cutting machines. As you know, classification is a two-step process. The court below determines the proper meaning of the tariff and whether the subject merchandise falls under that meaning. This court reviews those decisions de novo. The court below made several incorrect determinations. It classified Fulton's punches as hand tools and perforating punches of heading 82-03. Is that machinery for making up paper pulp paper or paperboard? You're asking it to go under 84-41? Yes, Your Honor. Machinery for making up? Right. It looks like a punch to me. Right. So what it basically does is two springs, two dies, and it contains an actuated lever, and it basically makes sheets with paper. My daughter did some of this. So you basically take a paper piece, you bring it to the machine, and you cut a specific shape. So it does make up paper items, paper products, mostly for scrapbooking. So it's not just a tool that cuts holes or perforates or weakens items. It creates paper products. And that's why it's an article of machinery for making up paper products, paperboard, paper pulp. We believe that the court disregarded non-statutory associates by cobbling up a definition from two separate terms, perforating and punch, in a vacuum, completely avoiding statutory construction. So that's one of the reasons. The second is that CIT erred in calling items of heading 84-41 paper production machines. In page 14 of its decision, it starts off as heading 84-41 is not a cutting machine provision, it is a paper production machine provision. But suppose that were wrong, but it were modified some to indicate that 84-41 was about something that makers of products, manufacturers of products make, not just makers of paper, but makers of products from paper. These devices are, as I understand it, consumer use products. They're not manufacturer's products at all. That would make the CIT's observation about 84-41 perhaps wrong, but regardless of whether it's a consumer product or a manufacturer product, it's still an 84-41 as long as the machinery makes up or uses paper in some way. It's an article of making up of paper product. There are several headings in the tariff which include made up. For example, made up textile articles of heading 6307 or made up fishing nets of heading 5608. So that's been in the tariff before. What the court below did was it said, oh no, this is a manufacturing provision for paper. And that's just simply incorrect. Right. My question, I tried to state it. Suppose that's half wrong and half right. It's a manufacturing paper, but rather manufacturing products that manufacturers manufacture. So that a product for your daughter to use to create cutouts is not within that provision. I'm trying to understand your question, Your Honor. A consumer use product article may be outside 84-41 even if 84-41 covers manufacturing articles for something other than the making of paper itself. I don't believe that to be true, Your Honor, just because the specific provision for 84-41-10 includes cutting machines of all kinds. It doesn't say specifically that it be a manufacturing product or a commercial product. It simply says that it has to be machinery for making up paper products. It doesn't have any limitations for manufacturers. Turning back to the other one, the 82-03, the explanatory note seems to indicate that items with bases like that are not covered if the reason they have a base is, what's the language, the language is by reason of their weight or size or the degree of force required. My understanding is, perhaps confirmed by what I'm looking at, that that would not be the reason for this having a base. The reason for this, Your Honor, to have a base so that a paper workpiece can be brought to this particular machine. Well, a stapler has a base and we use staplers sometimes on a surface and sometimes in our hand. That looks like what you would do with a stapler. Right, but regardless, it's still a machine, Your Honor. The reason for the base is simply to create stability for the product and you could not hold this in your hand and cut something very simply. You really have to put it down in order for it to have some stability. It provides energy from the working surface and it allows a paper workpiece to be cut. The base is necessary for the product, Your Honor. As I started to say, the court below made an incorrect determination by saying that heading 8439, actually, 8441 uncovers paper production machines when 8439 covers paper production machines. 8439 deals with machines which take paper pulp, shape the pulp into wet sheets, dry them, and calendar them. They do not cover any type of cutting machine. 8441 covers machines for making up products from paper and as I said before, made up means to make articles from a specific material. These punches, as per the explanatory notes, work with paper after the paper has been made. They have nothing to do with production. The subject punches are primarily used for scrapbooking. They're sold in Michael's, Joanne's. They're nowhere close to the metalworking items in 8203. The title of Chapter 84 is Nuclear Reactors, Boilers, Machinery, and Mechanical Appliances. It doesn't sound like this kind of thing that you're talking about here. Yes, but the heading, the specific heading 8441 covers other machinery. Other machinery.  Other machinery. Other machinery. And then in the superior heading for 8441, it says states including cutting machines of all kinds. So it could be a large guillotine type paper cutter with a base, but it could be also a small one. There's no limitation in the heading. That's why it's very clear that it would include all types of cutting machines, including a paper punching machine. The notes, Chapter 84, which, Note 1K, says this section does not cover articles of Chapter 82 or 83. I guess your answer is that this isn't an item of 82. Right. 82, again, covers, or at least the ones listed in that heading. Even though the heading of 8203 expressly includes perforating punches. Right, and perforating punches, we believe that the court below made an incorrect determination as to what perforating punches are. We've known them, or we've provided evidence in the record of them as steel shafts with variously shaped ends used to cut or pierce holes, metal or heavy substrate materials. These are primarily used for paper shaping and paper making. Again, it has nothing to do with cutting metal or metalworking. Isn't one of the items involved in leather punching? Yes, there was a distinction in the explanatory note about saddle punching. Right, so it's not limited just to metalwork. It does not appear, that's what the explanatory notes, but a lot of the items in the heading itself talks about metal cutting, metal cutting shears, pipe cutters, bolt cutters. All those, if you list them, used in generics with similar hand tools, would show that the purpose or the connection between all these items is that they cut metal. There is apparently some exception in the explanatory note, but the Congress has spoken clearly as to what items are in 8203, and it seems that most of them are metal cutting tools. Because these items, and as the court has conceded below, they are machines that cut paper, they should be classified under heading 8441, which includes paper cutting machines of all kinds, for the reasons that they avoided contextual analysis, and they misread 8441. We believe that the court's decision below should be reversed. I'd like to reserve, if there are any questions, those questions. We will save the rest of your time, Ms. Farris. Thank you. Ms. Farris. Good morning, Your Honors. I'm Beverly Farrell for the United States. With me today is Ms. Blake Hardin from the Office of Chief Counsel for the United States Customs and Border Protection. Thank you. Your Honors, the trial court got this decision correct. What is at issue here? There's no dispute as to what the articles are. Parties agree, and indeed samples were submitted to the court. There are numerous pictures throughout the joint appendix to reflect what these particular articles are. And the government's position was to differentiate between the larger and the smaller. Am I correct about that? Yes, Your Honor. The government differentiated. Earlier on, just to set the lay of the land here, earlier on the parties were attempting to resolve this case. And in so doing, there was an agreement that had been reached between the parties. And the government tried to, in so crafting some type of a settlement agreement, to make a distinction. And one of the distinctions was on the larger size punches, that that might be something that if one places it on a desktop, it might be easier if you had smaller hands or if it were a little heavy for someone's wrists, that maybe they would want to set it down and use it that way. But these articles, what's important here is that the language that Congress used in 8203, it talks about perforating punches and hand tools. It doesn't use the language hand-held tools. Right, but every other item is one that is carried in its ordinary use while being used. Not necessarily, Your Honor. What item on this list is not held, not in one hand, maybe two hands, but nevertheless held in its obvious principle use? Well, Your Honor, that's a point well taken. The perforating punches, because they include these types of machines, an issue here, there's no question that the definition, the common definition of a perforating punch or of a punch, just take away the word perforating, but of a punch includes a definition that actually covers the machines at issue here. Right, but then the CIT said, yes, but, the and similar hand tools means that the only perforating punches that are covered are ones that are also hand tools. And from that, you might well look at the rest of the list and say, the one common feature is that they're not resting on the ground when you use them. You're actually holding them from pipe cutters to bolt cutters to every other, like, rasp files. Right, and what the trial court did in looking at the language that Congress used in the statute, it noted the fact that perforating punches and similar hand tools is set off by its own set of commas. This is not the Oxford comma here. So we don't have a comma after the word punches and similar hand tools with similar hand tools reflecting back to the entire list of articles. So if we look at the fact that Congress has set this aside, then we have similar hand tools with respect to perforating punches, and we don't necessarily have to pull into play that this is something that must be held in the hand particularly. So I think the language that was used here by Congress and that the trial court below did observe sets forth that indeed it doesn't have to be held in the hand. But the fact that it's hand tools, hand tools often are used in the hand. And indeed there is in the record here... I guess I just want to be clear. It seemed to me that the trial court, the CIT, had in mind two things. Hold in one hand, work with a hand. What I'm saying is there's something in the middle. Carry while using. And it seemed to me that was awfully close to what your position seemed to be in the settlement position. That the things that were... What was the phrase? Operated best? Operated best. Operated best. When used on the surface, you were ready to say they belong elsewhere, in particular in 8441 and not here. So I guess it doesn't feel quite right to me to limit our options to the two that the CIT viewed as a dichotomy. Yes, I think, Your Honor, that's a point well taken. But I think that at that point, as we listened to what we had a conference with the court, and as we listened to issues that the court was raising, one of the problems that rears its head in importation context is that if you don't have a kind of bright line test, a test that's easy for someone to be able to classify a good, you end up having NISs taking every good that comes in. Well, does it operate better on a desktop or does it operate better in hand? That particular articulation was one that arose in the process of trying to settle. And once the settlement didn't work, then at that point, we stepped back. We advised the trial court that in the context of trying to settle the case, we went along that road. But in the context of whether or not we believe all these articles fall into 8441, absolutely not. We believe these are actually il nomine described in 8203 as a perforating punch and a similar hand tool. And why are they not equally described by the language of 8441, which is whatever else it is is not limited to machines for the actual making of paper? That's right, Your Honor. And the trial court may not have articulated as clearly and as nicely as one would have hoped, but the trial court did not look at these articles and say, oh, I'm looking at 8439 articles that make paper. It said paper production machines. It isn't machines for producing paper. That's not what the trial court said. It said paper production machines. And to the extent, if you look at 8441, it says these are not paper production machines. When we see all of the subsets of articles that are in 8441 in the subheadings, we see things like machines for making bags, sacks, or envelopes. These are paper production machines. Bags, sacks, and envelopes are made of paper and are machines that are producing these articles. But suppose you had a little home workshop and maybe a home business and you're getting paper and you're making designs on them, using this, and then wrapping them around some sort of bag and then selling them because you've made what was an ordinary, unappealing bag into one that's attractive and people will pay money for. In what way would that not be a paper product? I forget what the phrase is in 8441. Paper production machine? No, it's not the CIT's phrase. Oh, the other machinery for making up paper. Right. And it's making a paper product using... One of the things you want to do is make the outside of it attractive. Right. Your Honor, I think that when we look at the language that's used in 8441 and we see the various subheadings that talk about the products and we look at the explanatory notes, it appears that 8441 is something that's talking about mass production. And so a person using a punch that's used by the hand to punch out little designs, these are things that are being done almost in a one-off perspective. And to the extent that they're being used to sell, these products, when we look at the record, these products are for people who are crafting and making scrapbooks. That may be a fugitive use, punching out things and selling it, that when we're using one of the Wilton products, an issue in this case, that may just be a fugitive use. The primary use here for that, according to the advertising of these own articles, which are reflected, for example, page 164A in the record, punches are a quick and easy way to add interest, dimension, and color to your cards, tags, and scrapbook pages. You can glue punched shapes directly onto your projects or layer a sheet of cardstock that has been punched over coordinating cardstock for a reverse effect. And it talks about adding interest to scrapbook pages and cards and has an easy-to-use thumb lever. This is not something that's for mass production and generally this is not something that people are going to be selling. As Counsel for Wilton this morning showed the court, her daughter was using a piece of paper punching out designs. These are for people to enjoy beautifying and embellishing their own scrapbooks. Maybe they bought a Hallmark card and they think that they can make it even more beautiful because they've got these punches and they're going to design it. These are devices for people to produce something that's out of their heart and an act of love almost. Ms. Farrell, what's the standard of review here? Are we construing a provision such that it's a question of law or are we deciding whether this material fits within a certain provision or if we owe deference? Your Honor, this is a de novo review. What we have here is our goods. So we're construing a provision? Yes, Your Honor. This court is construing the provisions and indeed if it were to find yet another provision that was more appropriate it could, through a de novo review, select that because we have articles, there are no issues of fact as to what these articles are. The only question is where exactly do these articles, which we all agree what they are, we have pictures of them and the actual samples I believe reside with the CIP and we have one that was presented here today, they range in size but they all operate the same way. We know what they are so this has now collapsed into an analysis of just which heading in the tariff best describes the proper classification for these goods. We believe that the proper classification is 8203 because, no question, these are punches. Indeed, these are marketed as such. We didn't name them punches. This is what the manufacturer has named them and this is what they do. They punch through paper and as the two pieces of the article, inside there is a two-piece die of zinc and the top part punches through the bottom part and as the taut piece of paper lays between these two pieces of the die it goes through and it punches out a design. Now it also leaves a piece of paper that may have holes in it and one could perhaps take a piece of paper and design that but these are not articles like paper bags, envelopes, cartons and boxes. These are not things that have been molded and shaped. These are just little punch-outs. So these articles which have been called punches and are they perforating punches? Yes. We saw today a piece of paper where the paper has holes in it. The paper has been perforated by this article, by this device. Can I ask you, have you made an argument and if you haven't made an argument, are we free to think of this case under General Rule 4 where we say goods which cannot be classified in accordance with the above rule shall be classified under the heading appropriate to the goods to which they are most akin? Your Honor... Where we would say there's something off about 8441, there's something off about 8203. It's spinning wheels to try to parse them more finely to figure out what to do with a product that's not quite either one but we have a pretty strong intuition about which they're most akin to. No, Your Honor. I don't believe we should go to GRI 4. I think GRI 4 is really kind of a desperation move. GRI 1 typically eliminates the issue. At worst, this would be a GRI 3 and we don't believe it is a GRI 3 because we don't believe this falls into 8441. We do not believe that that category actually contemplates this particular device because we believe that 8441 is really for mass production and for commercial sales whereas this device in E.O. Nomine sitting in 8203... Let me just ask you, because I don't have enough experience with the HTSUS, what makes Rule 4 a desperation move? I mean, I understand conceptually, but what would be systemically the evil that would come from saying we've reached a point where this is a better way to look at it than further attempt at parsing? Well, Your Honor... I realize it's a very general question. I don't know that there... Obviously, it's built into the GRI, so there can't be an inherent evil in it. But this Court and the CIT, which deals with these cases every day, recognizes that we work our way through the GRI and hopefully we're able to land on a correct heading provision under GRI 1. But to the extent we're dealing with... If we land on the point where we say, well, this particular device seems to fall into both of these categories, then we look at which one best describes it. And there's no question that 8203 best describes it. Number one, it is a punch. Number two, 8203 does not preclude various... working various other materials. And Congress has told us that, actually in the language it used in 8203, because there is one article in that list. It's called Metal Cutting Shears. Congress used the word metal. The only article in the list of 8203 that's limited to metal are the Metal Cutting Shears. Everything else is open to whatever media you want to use. Are there non-metal bolts? There may be, Your Honor. I'm not aware. I mean, there are pipes. I think there are now that we're in a world where... We're not only using copper pipes, we're using PVC for houses. There are hard plastic bolts that people use. I'm sure you could use one of these cutting pliers for that. But a Metal Cutting Shear can only be used for metal. So 8203 is on its face. And the explanatory notes support us on that. But on its face is not limited. Everything except Metal Cutting Shears. I see my time is up. If there are any further questions? Thank you, Your Honor. Thank you, Ms. Farrell. Ms. Ellis has a little rebuttal time. A few minutes, actually. Firstly, I'd like to address opposing counsel's presumption that 8441 only covers commercial paper-making items. There's nothing in that heading that says that. And there's not even something in the explanatory that says that only machinery used for commercial-making purposes are in this heading. So we have to look to the language of the statute and limit it there. As for the idea that 8203 covers the anomaly of perforating punches, as we said in our brief, Your Honor, we believe that the court below made an incorrect determination on perforating punches. It took two separate definitions. It took perforating, piercing a hole, and punch, a device that makes holes. And she said, OK, that's a common meaning. We're not going to look at the rest of the statute, and that applies to the subject matter today. It just does not make any sense whatsoever. It does not take any contextual analysis. As for the idea that the similitude rule might be taken into consideration, that rule, General Rule 4, has rarely been used. There are numerous chapters in the tariff schedule. There are about 98, and maybe I'm not so correct in that. But there are numerous headings to put merchandise under. So the court generally tries to look at the more specific headings. And if you want to go to another rule, you might want to go to General Rule 3A, which looks at relative specificity. And that one, Your Honor, might apply here, where you do have a harder heading to satisfy, and that's paper cutting machines of all kinds. Cutting machines, as we said, it's a machine that's been conceived by both departments, by the opposing counsel and by the court, and it cuts paper. And the language, up all times, Your Honor, it's a very fast language. It includes commercial machines. It includes consumer machines. There's no limitation, again. And if you were ever to look at anything, you would be advised to look at the statute itself. 8203 covers numerous items, and most of them deal with metal cutting items as opposing counsel has indicated. 8203 deals with metal cutting shears. And in the line that includes perforating punches, it's pipe cutters and bolt cutters. Yes, it might be plastic. It could be, you know, the bolt could be plastic as well. But these are industrial type of materials. They have nothing close to what paper items are. And again, for those reasons, Your Honor, the court below completely missed it on the contextual aspect of deciding how perforating punches should be determined. They completely misread 8441. And the decision below just needs to be reversed. Thank you, Your Honor. Thank you, Ms. Silvers. We could say this was a punchy argument. We could also say it's on the cutting edge of customs law. And in any event, we'll take the case under advisement. Thank you, Your Honor. All rise.